UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CAESAR BONES,

                Petitioner,

      v.

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

                Respondent.

----------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 25 2012 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**
06 CV 4797 (MKB)

BRODIE, United States District Judge:

    Petitioner Ceasar Bones brings the above-captioned habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claim arises from a judgment of conviction after a jury trial for one count of rape in the first degree, two counts of sexual abuse in the first degree, and one count of assault in the second degree in the New York Supreme Court, Queens County. Petitioner was sentenced as a persistent felony offender to four concurrent prison terms of 22 years to life imprisonment. Petitioner appealed his conviction to the New York Appellate Division, Second Department, claiming that: (1) the statute of limitations precluded his prosecution, which was a claim that should have been considered by the trial court as timely but alternatively, if the claim was untimely, it was due to ineffective assistance of counsel; (2) Petitioner's rights to due process and confrontation were violated by testimony about DNA results from victim's rape kit from a witness who had not personally conducted the test; and (3) Petitioner's sentencing as a persistent felony offender was in violation of *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000). The Appellate Division rejected Petitioner's claims and affirmed his conviction. *People v. Bones*, 793 N.Y.S.2d 545 (App. Div. 2005). The New York Court of Appeals denied leave to appeal. *People v. Bones*, 5 N.Y.3d 826 (2005). In the instant application, Petitioner asserts that (1) his sentence as a persistent felony offender violated *Apprendi*; (2) his meritorious statute of limitations claim had not been raised in a timely manner because of ineffective assistance of counsel; and (3) allowing the expert witness to testify about DNA results when the witness had not personally conducted the test violated the Confrontation Clause. For the reasons set forth below, the petition is denied.

### I. Background

The evidence at trial established that on February 25, 1996, Petitioner approached a seventeen year-old high school student ("the Victim"); he showed the Victim his gun and then dragged her into an abandoned alley. (Resp't Aff. ¶ 4; Pet'r Appellate Br. 11.) Petitioner then proceeded to repeatedly punch the Victim in her face and rape her. (Resp't Aff. ¶¶ 5-10; Pet'r Appellate Br. 11.) After the attack, the Victim ran to her boyfriend's house and called the police. (Resp't Aff. ¶ 12.) The Victim was taken to the hospital, where she was treated for injuries to her face and where a rape kit was prepared. *Id.* at ¶ 13. The Victim described the Petitioner as a Hispanic man of African descent with "pretty hazel-ish greenish eyes" and a receding hairline, who looked to be homeless and smelled of alcohol. (*Id.* at ¶ 5; Tr. 679-680.) The Victim told police that she believed she saw Petitioner run into an institutional home across the street after the incident. (Resp't Aff. ¶ 11.) The police went to the home but the staff was unhelpful. *Id.* at ¶ 13. The Victim then went to the police precinct and viewed photographs on the police department's computerized system but did not see Petitioner's photograph. *Id.* On seven different occasions, the police officers arranged for the Victim to come to the precinct to see

photographs of the men at the home but the Victim failed to keep all seven. *Id.* at ¶ 14. A potential witness was located but he was mentally disabled and was unable to provide any leads. *Id.* at ¶ 15. Without any witness or the cooperation of the Victim, the police closed the case. *Id.*

On February 26, 1999, Petitioner was convicted for another sex crime and sent to prison. *Id.* at ¶ 16. Article 49-B of the New York Executive Law required convicted offenders of certain specified crimes, including sexual assault and other violent crimes, to have their DNA tested and placed into a state DNA identification index. N.Y. Exec. Law §§ 995, 995-c. In March 2000, the New York City Police Department, the District Attorneys' Offices, and the Office of the Chief Medical Examiner began testing more than 14,000 rape kits for DNA matches as part of the kit backlog project. (Resp't Aff. ¶¶ 17-19.) Through the project, DNA from the rape kits was compared with the DNA identification index. *Id.* One June 28, 2001, while in prison, Petitioner's DNA was matched to the DNA in the Victim's rape kit (a "cold hit"). *Id.* A police officer subsequently interviewed Petitioner, who admitted he had been in the area at the time of the crime. (Pet'r Appellate Br. 12.) He also admitted that he was often at the liquor store around the corner from the crime scene; and that he often mixed alcohol with Haldol, which he was taking for mental problems. *Id.* Petitioner admitted that he had sex with many women in the area but did not remember the rape. *Id.*

Petitioner was charged by the grand jury on August 14, 2001 with one count of rape in the first degree, two counts of sexual abuse in the first degree, and one count of assault in the second degree. (Resp't Aff. ¶ 21.) He was indicted on August 20, 2001. *Id.* Petitioner had three attorneys at the pre-trial stage and a fourth attorney for the trial stage. (Pet'r Appellate Br. 9.) In October 2002, his fourth attorney moved to dismiss the indictment under the theory that the statute of limitations had run. *Id.* The People opposed the motion on two grounds: It was

3

untimely, as more than 45 days had passed since petitioner's arraignment; and the statute of limitations had tolled until the "cold hit" identified Petitioner as the assailant responsible for the Victim's rape. (Resp't Aff. ¶ 12.) The trial court denied petitioner's motion as untimely. *Id.*

At trial, the Victim testified and identified Petitioner as the rapist, and the People introduced Petitioner's police statement. (Tr. 688, 773-774, 777-785.) The People also introduced a DNA expert who testified that the DNA profile of the rapist in the Victim's rape kit matched the DNA profile of Petitioner. (Tr. 795-839.) The expert testified that the probability of a random match was one in greater than one trillion. (Tr. 827.) Petitioner was convicted of all charges at trial. *Id.*

Prior to sentencing, the People filed notice that it was seeking to have Petitioner sentenced as a persistent felony offender under New York Penal Law § 70.10. (Pet. Br. 3.) At his sentencing proceeding, Petitioner conceded the existence of a 1978 second degree rape conviction and a 1986 first degree rape conviction and he was arraigned as a persistent felony offender. *Id.* In addition to Petitioner's two prior convictions, the People introduced the fact that the 1978 prosecution was for the rape of a seven year old girl and that Petitioner had committed several additional sexual attacks. *Id.* at 4. Petitioner's counsel argued that the persistent felony offender statute violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id.* 5. The court determined that a persistent felony offender sentence was appropriate, and sentenced Petitioner to concurrent prison terms of 22 years to life. *Id.*

Following his sentence Petitioner exhausted his appeals in state court. *See* 28 U.S.C. § 2254 (b)(1) ("An application for habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State."). Petitioner filed his appeal to the Appellate Division, Second Department in July 2004. In this appeal Petitioner raised three

4

claims: (1) the statute of limitations precluded his prosecution, a claim that should have been considered by the court as timely, but alternatively if the claim was untimely it was due to ineffective assistance of counsel; (2) Petitioner's rights to due process and confrontation were violated by testimony about DNA results from victim's rape kit; and (3) Petitioner's sentencing as a persistent felony offender was in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Pet'r Appellate Br. 25, 34, 43.) The Appellate Division, in a unanimous decision, affirmed the conviction. *People v. Bones*, 793 N.Y.S.2d 545 (App. Div. 2005). The Appellate Division found that the statute of limitations claim was untimely and properly denied. *Id.* at 546. Petitioner had failed to preserve his confrontation claim; furthermore, the DNA evidence was properly admitted as a business record. *Id.* The court found the *Apprendi* claim without merit. *Id.* Petitioner sought leave to appeal to the New York Court of Appeals, which was denied. *People v. Bones*, 5 N.Y.3d 826 (2005).

## II. Discussion

### a. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *see also Portalatin v. Graham*, 624 F.3d 69, (2d. Cir. 2010) ("If none of these conditions is met, even if the federal court would have reached a different conclusion on direct review, the petition must be denied."). The decision must be "objectively unreasonable." *Andrade*, 538 U.S. at 75. In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Persistent Felony Offender Statute

Petitioner alleges that the state unreasonably applied *Apprendi* and its progeny by affirming his sentence under New York's persistent felony offender statute. (Pet. Br. 9.) The Appellate Division's finding that the *Apprendi* claim was "without merit" is a determination on the merits of the claim, requiring AEDPA deference. *See, e.g., Jimenez v. Walker*, 458 F.3d 130, 146 (2d. Cir. 2006) (Appellate Division's holding that a claim was "either unpreserved for appellate review or without merit" is a determination on the merits requiring AEDPA deference);

*Howard v. Walker*, 406 F.3d 114, 120-22 (2d. Cir. 2005) (Appellate Division's determination that claims "are without merit" is an adjudication on the merits).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court then clarified in *Blakely v. Washington*, 542 U.S. 296 (2004), that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303 (emphasis in original).[1]

According to New York's persistent felony offender statute, "[w]hen the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court . . . may impose the sentence of imprisonment authorized by that section for a class A-I felony."[2] N.Y. Penal Law § 70.10(2). To do so, the court must first find beyond a reasonable doubt that defendant has two or more felonies and, then, the court looks to the nature and circumstances of his or her criminal conduct

---

[1] *Cunningham v. California* is the latest in the *Apprendi* line of cases. 549 U.S. 270, (2007). In *Cunningham*, the Supreme Court struck down the California determinate sentencing law which allowed the trial judge the discretion to pick between a lower term, middle term, and upper term of sentences based on aggravating or mitigating circumstances established by a preponderance of the evidence. *Id.* at 277-79. The Supreme Court found that "[b]ecause a DSL authorizes the judge, and not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." *Id.* at 293.

[2] A sentence for a class A-I felony ranges from 15 years to life to 25 years to life. N.Y. Penal Law §70.00(3)(a)(i).

under a preponderance of the evidence standard. N.Y. Crim. Proc. Law § 400.20. The court is required by law to set out its reasons in the record. N.Y. Penal Law § 70.10(2).

The New York Court of Appeals addressed the constitutionality of the persistent felony offender statute in *People v. Rosen*, 96 N.Y.2d 329 (2001). In *Rosen*, the New York Court of Appeals construed the statute to require that that the court "first conclude that defendant had previously been convicted of two or more felonies" before it is permitted to review the defendant's history and character. 96 N.Y.2d at 334-35. *Rosen* concluded that "[i]t is clear from the foregoing statutory framework that the prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender." *Id.* Because the prior felonies are the "sole determinate" of the enhanced sentence, the persistent felony offender statute does not violate *Apprendi*. *Id.* at 335. Four years later in *People v. Rivera*, 5 N.Y.3d 61 (2005), the New York Court of Appeals re-visited the issue, in light of *Blakely*. Reiterating the statutory interpretation set forth in *Rosen*, the New York Court of Appeals held in *Rivera* that the "sole determinate" of whether a defendant is subject to the persistent felony offender statute is the defendant's prior convictions and, therefore, the statute is still constitutional after *Blakely*. *Rivera*, 5 N.Y.3d at 68 ("[T]he predicate felonies are both necessary and sufficient conditions for the imposition of the authorized sentence for recidivism; that is why we pointedly called the predicate felonies the 'sole' determinant.").

Federal habeas courts are not bound by the state's interpretation of federal law but are bound by the state's construction of its own law. *Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010). The "core principal" in deciding whether a sentencing scheme violates a defendant's Sixth Amendment rights is whether judicial factfinding "results in a sentence in excess of the *Apprendi* maximum for a given offense." *Id.* at 88. "The *Apprendi* maximum . . . is the apogee

8

of potential sentences that are authorized based on factual predicates obtained in compliance with the Sixth Amendment: those found by the jury, those admitted by the defendant, and findings of recidivism." *Id.*

As the Court of Appeals for the Second Circuit recognized in *Portalatin*, the New York Court of Appeals construed the persistent felony offender statute such that only the prior felonies, and not any judicial factfinding, are factual predicates to the imposition of a class A-1 sentence. *Id.* at 89. Whether the Court "agrees or disagrees with the New York Court of Appeals' construction of New York law is of no moment. As the Supreme Court has long held, 'state courts are the ultimate expositors of state law.'" *Id.* (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). Although *Portalatin* noted that it was bound only by the New York Court of Appeals' construction of the statute, not its determination regarding the statutes constitutionality, *Portalatin* found that *Rivera* was not "merely a characterization" of the statute but rather "an exposition of its terms." *Portalatin*, 624 F.3d at 89. Accordingly, *Portalatin* held that "because the New York Court of Appeals has interpreted step two of the [persistent felony offender] sentencing scheme as a procedural requirement that informs only the sentencing court's discretion, the New York courts were not unreasonable to conclude that this consideration is unlike the factfinding requirements invalidated in *Blakely* and *Cunningham*." *Id.* at 91.

Thus, the Second Circuit decision in *Portalatin* determined that the New York persistent felony offender statute does not violate a defendant's rights under *Apprendi*. In addition, at Petitioner's sentencing, the trial court applied the persistent felony offender statute consistently with the construction set forth by the New York Court of Appeals in *Rosen* and *Rivera*. The trial court first determined that Petitioner was a persistent felony offender based on his prior felonies. (Sentencing Tr. 17.) Then, the trial court considered various other factors, including the nature

of his prior sexual assaults. (Sentencing Tr. 25.) The state court was not unreasonable in affirming Petitioner's sentence under the persistent felony offender statute.

### c. Statute of Limitations

On his direct appeal in state court, Petitioner claimed that his prosecution was barred by the statute of limitations and his case should have been dismissed. (Pet. Appellate Br. 24-34.) Alternatively, Petitioner argued that if the motion to dismiss the indictment was untimely, then it was because of ineffective counsel. *Id.* In the instant petition, Petitioner continues to argue that the statute of limitations barred his prosecution and his failure to timely move to dismiss the prosecution was due to ineffective assistance of counsel. (Pet'r. Br. 36-37.) For the reasons below, both claims are dismissed.

### i. Statute of Limitations

The Court may not review the trial court and Appellate Division's decisions that the statute of limitations motion was untimely. This Court may only review violations of the federal Constitution and federal law. 28 U.S.C. § 2554(a); *Wilson v. Corcoran*, 562 U.S. —, 131 S.Ct. 13, 16 (2010) ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Mannix v. Phillips*, 619 F.3d 187, 199-200 (2d Cir. 2010) ("[S]tate courts are the ultimate expositors of state law."(citing *Mullaney*, 421 U.S. at 691)).

The Appellate Division held that under § 30.10 of the New York Criminal Procedure Law, Petitioner's "motion to dismiss as barred by the statute of limitations was properly denied" because "[t]he motion was not timely made, and the trial court providently declined to entertain

it in the interest of justice." *Bones*, 793 N.Y.S.2d at 546 (internal citations omitted). Because the Appellate Division decision rests firmly on its interpretation of New York state's criminal procedure law and not federal law, it is not reviewable by this court. *See Swarthout v. Cooke*, 563 U.S. —, 131 S.Ct. 859, 863 (2011) (per curiam) (holding that "a 'mere error of state law'" does not give rise to a federal due process claim that can be reviewed by federal courts in habeas petitions (internal citations omitted)); *Carvajal v. Artus*, 633 F.3d 95, 106-07 (2d Cir. 2011) (holding that claims considered by the state courts under New York Criminal Procedure Law could not be reviewed by federal courts in habeas petitions).

### ii. Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, a petitioner must show that counsel's performances "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. "A petitioner does not establish ineffective assistance where his attorney fails to advance a meritless claim." *Parilla v. Berle*, 679 F.Supp.2d 441, 447 (S.D.N.Y. 2010) (citing *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995)).

Where, as here, the Appellate Division did not review the effective assistance of counsel claim and the New York Court of appeals declined to review the application, this Court will review the claim *de novo*. *See Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (holding that federal claims in habeas petitions which were fairly presented but which were not reviewed on

11

the merits by state courts are reviewed *de novo* by federal courts); *Cox v. Miller*, 296 F.3d 89, 101 (2d. Cir. 2002) (same).[3]

Plaintiff alleges that his pre-trial counsel was ineffective by failing to raise a statute of limitations defense within the 45 days of his arraignment on the indictment as required by statute. (Pet'r Appellate Br. 26-27.) Respondent contends that the statute of limitations claim was meritless and thus Petitioner's counsel was not ineffective in failing to raise it earlier. (Resp't Br. 42-53.) New York Criminal Procedure Law Sections 30.10 (2)(b) and 30.10 (3)(f) require that any prosecution be commenced within five years for a Class A felony or a crime committed against a child under eighteen. *Id.* at 42. In addition, there is a tolling provision, in which the statute of limitations is tolled for an additional five years for any period during which "the whereabouts of the defendant were continuously unknown and continuously unascertainable

---

[3] Respondent contends that the Appellate Division's silence on the ineffective assistance of counsel claim represents a determination on the merits, since the claim was properly presented to the court. (*See* Opp. 39-42.). However, the cases cited by Respondent stand for the proposition that when the state appeals court explicitly dismisses a claim without giving its rational for the decision, the decision should be considered an adjudication on the merits. *See, e.g., Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001) (finding an adjudication on the merits where the Appellate Divisions specifically stated that it "denied" the "ineffective assistance of counsel" claim); *see also Eze v. Senkowski*, 321 F.3d 110, 122 (2d Cir. 2003) (citing *Sellan* for the proposition that it is sufficient for a state court to deny a claim without giving its reasoning nor citing relevant federal case law). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan*, 261 F.3d at 312). "In applying this two-part test, we consider: '(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits.'" *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002). Because the Appellate Division never mentioned ineffective assistance of counsel nor used a catch all phrase to dismiss the *all* the remaining claims, the Appellate Division did not adjudicate the ineffective assistance of counsel claims on the merits. *See id.* ("Because the Appellate Division never indicated in any way that it had considered [Petitioner]'s Sixth Amendment claims, we find that those claims were not adjudicated on the merits, and therefore that the AEDPA's new, more deferential standard of review does not apply.").

by the exercise of reasonable diligence." N.Y.C.P.L. § 30.10(4)(a)(ii); *see also People v. Seda*, 93 N.Y.2d 307, 308 -09 (1999) (holding that the "tolling provision of CPL 30.10 (4) (a) (ii), which excludes from the Statute of Limitations period any time during which the whereabouts of a defendant are continuously unknown and unascertainable by the exercise of reasonable diligence, applies to the time during which the identity of the defendant . . . remained unknown). Respondent contends that the tolling provision applied because the police engaged in reasonably diligent efforts to find the Petitioner, including having the Victim review photographs in their database, following up with the personnel at the residence that the Victim believed the Petitioner entered after the rape, and scheduling several meetings with the Petitioner to review additional photographs. (Resp't Br. 45-48.) Thus, it was not until the "cold hit" on June 28, 2001 that the Petitioner's whereabouts where known. (Resp't Br. 44.) The Petitioner was indicted six weeks later, which was well within the tolling period. *Id.* The Court agrees that, under these circumstances, the tolling provision should have applied.

Even if Petitioner could establish that his pre-trial counsel's performance fell below an objective standard of reasonableness, he cannot establish that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Parilla*, 679 F.Supp.2d at 447 (holding that it was not ineffective assistance of counsel to not raise a statute of limitations claim when the claim was meritless and would not have prevailed); *Figueroa v. Donnelly*, No. 02 Civ. 6259(NRB), 2003 WL 21146651, at *10 (S.D.N.Y. May 16, 2003) (habeas petitioner's claim for failure to seek dismissal on statute of limitations grounds failed the deficient performance and prejudice prongs because the statute of limitations had been tolled under N.Y.C.P.L. §§ 30 .10(2)(b), (4)(a)). The record established that the police acted with reasonable diligence in trying to locate Petitioner and was unable to do so until the "cold

hit." (*See* Resp't Br. 45-47; Tr. 6-8.) At trial, the court told the Petitioner that the statute of limitations had been tolled, which added an additional five years and made the total period ten years and not five years, because the police did not know who he was initially. (Tr. 7.) In nearly factually identical cases, the New York Court of Appeals has held that defendants' statute of limitations were tolled until the "cold hit" matched their DNA to the crime. *See, e.g. People v. Ramos,* 13 N.Y.3d 881, 881-82 (2009) ("Although the indictment was nearly 10 years after the incident, defendant's whereabouts were 'continuously unknown and continuously unascertainable,' despite the reasonable diligence of the detectives assigned to the case, until his DNA profile from the rape kit taken from the victim was matched to DNA evidence taken from defendant pursuant to a subsequent incarceration."); *People v. Brown,* 13 N.Y.3d 332, 340-41 (2009) (holding that "defendant's [statute of limitations] motion would have been meritless" under the tolling provision in C.P.L. § 30.10 and his counsel was not ineffective in raising it because the defendants identity could not have been known until the cold hit was made through the DNA backlog project); *see also Seda,* 93 N.Y.2d at 308-09 (establishing the principle that "whereabouts" in tolling statute includes when defendant's identity is unknown). Because the statute of limitations claim was meritless, the results of the proceeding would not have been different if counsel raised the claim earlier, and thus Petitioner cannot sustain a claim for ineffective assistance of counsel.

    d. **Confrontation**

Petitioner alleges that his confrontation rights under *Crawford v. Washington,* 540 U.S. 36 (2004), were violated when DNA test results were presented through a witness who did not personally perform the test and the actual tester was not subject to cross examination at trial. (Pet'r Br. 38-39.) Under New York law, to preserve a claim for appellate review, a defendant

must argue to the trial court the same specific theory of error that he raises on appeal. C.P.L. § 470.05(2) (contemporaneous objection rule); *People v. Hawkins*, 872 N.Y.S.2d 395, 399 (2008) (describing the rule). The general invocation of a constitutional guarantee is not enough to preserve a specific argument of constitutional error for review. *Hawkins*, 872 N.Y.S.2d at 399 ("As we have repeatedly made clear—and underscore again—general motions simply do not create questions of law for this Court's review.") (citations omitted). The Appellate Division found that at trial, Petitioner failed to object to the introduction of the DNA's expert testimony with the specificity required to preserve his Confrontation Clause claim for it to be reviewed on appeal. *Bones*, 793 N.Y.S.2d at 546.[4] The Appellate Division held that Petitioner's confrontation claim was not preserved for its appellate review under the contemporaneous objection rule. *Id.* The Appellate Division reviewed the admission of the DNA report under the general hearsay rule, which had been raised at trial, and found that it had been properly admitted as a business record. *Id.* The procedural default in New York state courts is an independent and adequate state ground which bars federal habeas review, unless cause and prejudice or miscarriage of justice can be demonstrated. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

---

[4] Petitioner objected contemporaneously to the admission of the DNA expert's testimony, but only on the ground that the expert did not have personal knowledge of the test results that were documented in the laboratory reports, which was a general hearsay objection. (*See* Pet. Appellate Br. 33.) Petitioner also moved for a mistrial on general hearsay grounds after the expert's testimony. (Tr. 845-46.) However, at no point during trial did the Petitioner mention the Confrontation Clause. Thus, the Appellate Division found that the Confrontation Clause argument was not preserved for their review. *Bones*, 793 N.Y.S.2d at 546. State courts must be given the opportunity to decide "the substance" of each of a petitioner's articulated claims before federal habeas review. *Gray v. Netherland*, 518 U.S. 152, 163 (1996); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the claims in the first instance." (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

Federal courts are generally not permitted to review questions of federal law presented in a habeas petition, when the state court's decision rests upon a state law ground that "is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)). A state's determination that a claim is procedurally barred is an independent and adequate state ground. *Carpenter*, 529 U.S. at 453 (holding that "a prisoner who had *presented* his claim to state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it," had procedurally defaulted and such default was "independent and adequate state ground" barring habeas review). It is well settled that New York's contemporaneous objection rule, which is codified in C.P.L. § 470.05, is an adequate and independent bar to federal habeas review. *Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *see also Williams v. Ercole*, No. 09 Civ. 363, 2011 WL 4944268, at *6 (E.D.N.Y. Oct. 12, 2011) (finding adequate and independent state law grounds where the petitioner failed to raise his legal insufficiency claim at trial). Accordingly, Petitioner's confrontation clause claim is procedurally barred.

A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) ("[A] habeas petitioner may also bypass the

16

independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted.") (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)); *see also Carvajal*, 633 F.3d at 108 n. 9 ("Actual innocence means 'factual innocence, not mere legal insufficiency.'" (quoting *Bousely v. United States*, 523 U.S. 614, 623 (1998))). Since Petitioner has not demonstrated cause for his failure to raise those claims in state court, actual prejudice therefrom, or that he is actually innocent of the crime for which he was convicted, those claims are dismissed as procedurally defaulted.

### III.  Conclusion

For the foregoing reasons, the petition for habeas corpus is denied and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962). The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: May 25, 2012
    Brooklyn, NY

/S/
_____
MARGO K. BRODIE
United States District Judge